KEYS BROTHERS, Appellant, v. J. P. WEAVER.

**Subscription:** WHO MAY ENFORCE.  Defendant subscribed "for the purpose of securing the location of a corporation (stated) in a city" (stated).  Plaintiffs were officers of the corporation.  After the subscription they acquired all its stock, moved the business to said city and then operated it as a partnership.  *Held,* plaintiffs could not enforce said subscription.

DEEMER, J., took no part.

*Appeal from Pottawattamie District Court.*—HON. H. E. Deemer, Judge.

THURSDAY, MAY 23, 1895.

Action on a subscription.  Judgment for the defendant, and the plaintiffs appealed.—*Affirmed.*

*Sims & Bainbridge* for appellants.

*Harl & McCabe* for appellée.

Granger, J.—Prior and up to the summer of 1887 the Red Oak Cart & Buggy Company was a corporation doing business at Red Oak, Iowa. The board of trade of Council Bluffs, Iowa, became interested in the removal of the corporation to the city of Council Bluffs, and to that end a committee of the board of trade was selected to secure subscriptions for a bonus of two thousand dollars for that purpose, and the defendant was a subscriber thereto for one hundred dollars; and this action is to recover that amount on the following contract: "For the purpose of securing the location in the city of Council Bluffs, Iowa, of the Red Oak Cart & Buggy Co., we hereby agree to pay on demand the sums set opposite our names to the committee of the board of trade appointed to take charge of this matter. These subscriptions are made without any condition or reservation, and are absolutely binding upon the subscribers. [Signed]   John P. Weaver, $100."

This action on the part of the board of trade was followed by a contract between it and the Red Oak Cart & Buggy Company for its removal to Council Bluffs. An important question is as to the right of this plaintiff to recover on a contract between the corporation and the board of trade or its committee. The averments of the petition are not that the plaintiff is an assignee of the contract, but that having itself "removed the business, property, good will, and all of the interests of said Red Oak Cart & Buggy Company, to Council Bluffs, Iowa, being the owners thereof," etc., it is entitled to recover. Appellant relies upon the facts as disclosed in the evidence to show its right under the contract, and we cannot

more briefly and accurately present many of them than to copy a part of the testimony of its principal witness, one F. H. Keys, even though it may involve some repetition. The testimony is as follows: "I am one of the plaintiffs in this action. The firm of Keys Bros., plaintiffs, is composed of N. A. Keys, F. H. Keys, and E. W. Keys. Am acquainted with the defendant. The business of Keys Bros. is that of manufacturing buggies and spring wagons and carriages, and like vehicles. We have been conducting the business here in Council Bluffs under that name about four years. Prior to that time we were located at Red Oak, in this state. There as Keys Bros., we conducted a hardware business. This same business was conducted by the Red Oak Cart & Buggy Company. The business of the Red Oak Cart & Buggy Company at the time, at Red Oak, was the manufacturing of carts, buggies, spring wagons, carriages, etc.,—the same line exactly. I and my two brothers, who are now associated with me, were all members of the Red Oak Cart & Buggy Company, and each of us officers of that company. The stock of the Red Oak Cart & Buggy Company, at the time Keys Bros. removed to Council Bluffs, passed into the hands of Keys Bros.,—the present firm. The business of the Red Oak Cart & Buggy Company was transferred here when we came. We transferred everything that could be transferred, except a few of the finished goods that we could ship from there. As we were making our transfer and getting ready here, finished goods were many of them shipped from there, while the unfinished goods came to Council Bluffs and were finished here and shipped from here. The Red Oak Cart & Buggy Company, in conducting its business at Red Oak, had all of the necessary appliances and tools for the working of iron and wood and material that would go into the manufacture of buggies. In

removing to Council Bluffs, all of these goods came with us. This subscription paper marked 'Exhibit A' came to us from the committee of the board of trade of Council Bluffs. Committee was composed of C. R. Hanan, T. J. Evans, and C. J. Colby. There had been negotiations pending between Keys Bros., or the representatives of the Red Oak Cart & Buggy Company, and the board of trade of Council Bluffs, Iowa, with a view to the removal of the business of the Red Oak Cart & Buggy Company to Council Bluffs. This subscription paper was delivered to us by the committee I have named, in pursuance of these negotiations. Keys Bros. brought the business of the Red Oak Cart & Buggy Company to Council Bluffs, Iowa, in reliance upon the delivery of this subscription list. It was a part of the consideration of our coming. Our place of business in Council Bluffs is in Twin City Place. The defendant has not paid to us the amount of his subscription. If he paid to anybody else we have no knowledge of it." Cross-examination: "The Red Oak Cart & Buggy Company was a corporation of Red Oak, organized under the laws of the state of Iowa. At the time of the negotiations referred to, Keys Bros. were engaged in business as a copartnership and dealers in hardware in Red Oak, and were likewise stockholders and officers of the Red Oak Cart & Buggy Company. There were only two of Keys brothers in the hardware business,— N. A. Keys and F. H. Keys. They did business under the name of Keys Bros. Each member of the present firm of Keys Bros. was a stockholder in the Red Oak Cart & Buggy Company at the time these negotiations began. Besides the three present members of Keys Bros., there were also B. S. Porter, Gus Isehold, and A. De Hart. They were all equal subscribers to the stock, but not equally paid up. B. S. Porter was president; I was secretary and treasurer; N. A. Keys, vice-presi-

dent and general manager.    At that time we were engaged in the manufacture of a road cart known as the 'Porter Cart.' Mr. B. S. Porter was the originator of that cart.    He was exercising the duties of his office as president at the time of these negotiations.    The other gentlemen were directors.    When we came to Council Bluffs the copartnership of Keys Bros. was formed.    The lots upon which our factory is built were conveyed to N. A. Keys and F. H. Keys.    E. W. Keys was not originally a member of the firm.    He did not become a member until after we had located here.    At the time these negotiations commenced, we had sold our hardware store at Red Oak.    The firm of Keys Bros. had been engaged in the hardware business at Red Oak since 1875.    The negotiations to which I refer are the negotiations that were carried on by me, as secretary and treasurer of the Red Oak Cart & Buggy Company, and the board of trade of Council Bluffs.    I don't remember just how the papers were signed, but I usually signed all the papers in that way.    These negotiations were conducted in the name of the Red Oak Cart & Buggy Company, and the contract and negotiations were with a corporation of Council Bluffs known as the 'Board of Trade.'    I think that was a corporation organized among the citizens of Council Bluffs for the purpose of advancing the interests of the city, and Mr. B. Zeverly was secretary.    I remember they had an organization, a president and secretary, and board of directors.    It was our supposition and understanding that our negotiations were with the officers of the board of trade with reference to the arrangement upon which we would come. It was a part of the arrangement that the board of trade was to furnish us with a building site and a certain bonus.    We supposed this committee of the board of trade was appointed to solicit subscriptions from citizens to enable them to pay the

bonus they had agreed upon. We were doing business with this board of trade, and we understood all the time that this committee was a committee of the board of trade. We were doing business with that understanding. It was our supposition that this subscription paper was circulated by the committee under the authority of the board of trade, for the board of trade to get the money to pay us the bonus. We had nothing to do with the appointment of the committee. Our contract was made to receive from the board of trade, among other things, a certain bonus of money. This paper identified as Exhibit A was not turned over to us until after we had removed to Council Bluffs, and after a considerable amount of money subscribed had been collected by the committee, or by the board of trade. This paper was turned over to us by the committee in the presence of the board of trade." There are other matters in the record proper to be considered in the way of evidence, all of which we cannot well produce.

Appellant states a proposition to be considered as follows: "The gist of this action, therefore, is on the question whether the subscription itself imports an undertaking, in the light of the record, on the part of the defendant, to pay the amount of said subscription to these plaintiffs." The contract of subscription, on the face of it, was "for the purpose of securing the location in the city of Council Bluffs, Iowa, of the Red Oak Cart & Buggy Co." Wherein the contract is doubtful, the construction may be aided by the circumstances and conditions under which it was made, as known to the parties. The Red Oak Cart & Buggy Company had a distinct legal existence, and the contract of subscription seems, unmistakably for its location in Council Bluffs. Appellant says: "Without question, it was the business that was con-

ducted in the name of that company, and the assets and appliances by means of which that business was transacted, that was wanted in Council Bluffs." It seems to us that it is quite immaterial what the city wanted, for the purpose of fixing the obligation of the defendant. His obligation is personal, and the consideration for his undertaking is specific. A compliance on the part of the corporation would fix his liability, regardless of the wants or purposes of the city. If the letter of his undertaking is to be enlarged or changed by construction to conform to the spirit of it, the facts to justify the construction must be personal as to him, and such as he might legally be presumed to have contracted with reference to. Considering the evidence in the case for that purpose, it nowhere appears that his undertaking was in any way influenced or induced except by what is expressed in the written contract. It is likely true that there is an implied discretion confided to the board of trade, or its committee, in some particulars not indicated in the writing, such as the time for the location, the place in the city, what part of the plant should be changed from Red Oak, and likely in many other particulars; but as to who should locate in Council Bluffs, to render the defendant liable, no discretion is confided, either expressly or by implication. It was to be the Red Oak Cart & Buggy Company. It was not a contract with Keys Bros., as then or since organized. Nothing indicates that defendant signed the contract of subscription with knowledge of the existence of such a firm. The corporation, with its name and prestige, may have been the chief, or in fact only, inducement to make the subscription. Of this we do not know, nor should we inquire. He subscribed an amount to secure that corporation to locate in Council Bluffs. It has not been done. Much is said in argument of the committee of the board of trade being

the agent of the defendant. His authority to the committee is included in the contract of subscription, and, if his agent at all, it was only to deal with the particular corporation, and that is what it did do. Since that time the plaintiff firm has been organized, and the plant of the corporation has been transferred to it, and located in Council Bluffs. The defendant did not subscribe for that purpose. It matters not that it may be just as good for him. The plaintiff firm does not, by its course of conduct, succeed to the rights of the corporation. The judgment below is *affirmed*.

Deemer, J., takes no part.